UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **JIMMY GARZA DELGADO,** | § | |
| **TDCJ-CID No. 1035413,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-05-53** |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION & ORDER**

Jimmy Garza Delgado, Jr. ("Delgado"), an inmate of the Texas Department of Criminal

Justice - Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas

corpus under 28 U.S.C. §§ 2241 and 2254. (Dkt. #1). The Director has filed a motion for

summary judgment (Dkt. #19) to which Delgado has responded (Dkt. #20). Delgado has also

filed a motion for summary judgment. (Dkt. #18). Having considered the motions, response,

record and the relevant law, the Court finds that the Director's motion should be GRANTED and

the petitioner's motion should be DENIED.

**I. Background**

On April 23, 2001, Delgado was convicted by a jury of the first-degree felony offense of

murder. (Dkt. #5-5 at 2). On April 24, 2001, the trial court assessed the punishment of life

imprisonment in the TDCJ-CID. (Dkt. #5-5 at 3). Delgado appealed his conviction. On August

28, 2003, the Thirteenth Court of Appeals affirmed Delgado's conviction. (Dkt. #7-3); (Dkt. #7-

4).  Delgado did not file a petition for discretionary review ("PDR").  On July 27, 2004, Delgado

filed a state application for a writ of habeas corpus.  On January 6, 2005, the trial court

recommended that Delgado's application for a writ be denied.  (Dkt. #6-5 at 20).  On April 13,

2005, the Court of Criminal Appeals denied Delgado's application "without written order."  (Dkt.

#6 at 2).  On April 24, 2005, Delgado filed his federal petition.  (Dkt. #1).

## II.  Summary of the Facts

The Government presented evidence supporting the following sequence of events at

Delgado's trial.  On March 31, 2000, Delgado, Matthew Lee Salazar ("Salazar"), Amador

Anzualda ("Anzualda") and Michael D. Martinez ("Martinez") traveled from Victoria, Texas to

Port Lavaca, Texas in search of Christopher John Vasquez ("Vasquez").[1]  Vasquez owed Delgado

a $300.00 drug debt.

The men arrived at Vasquez's residence on that morning.  After Delgado knocked on the

front door, Vasquez ultimately appeared and engaged Delgado in conversation.  Vasquez then got

in the back seat of Martinez's Cadillac and all of the men left.

The men first drove to a gas station, and then towards Magnolia Beach.  They arrived at

the LaSalle Monument at approximately 10:00 A.M. or 10:15 A.M.  Upon arrival, the men drank

some beer and talked.

After talking for a while, Delgado attacked Vasquez with a beer bottle.  The other men

simultaneously rushed Vasquez and beat and stabbed him repeatedly.  As the altercation

continued, Vasquez lost and regained his consciousness several times.  Each time Vasquez

---

[1] Delgado, Salazar, Anzualda and Martinez were all associated with the so-called "Mexican Mafia" gang.  Delgado was a "ranking member."

2

regained consciousness, he was additionally beaten and stabbed.  Vasquez eventually made his

way to the water, where he was further beaten and stabbed.  Ultimately, Delgado stabbed Vasquez

twice in the back, then cut his throat twice and dunked his head under the water.

Before the men left the scene, Delgado instructed them to pick up all of their beer bottles

and other evidence.  The men then returned to Victoria.

### III.  Claims and Allegations

Delgado presently challenges the fact or duration of his confinement on the following

grounds:

1.    the prosecution failed to disclose the following exculpatory evidence: (a) a Federal
Bureau of Investigation ("FBI") report describing an interview with Oscar Garcia
("Garcia"); (b) a FBI report describing an interview with Fermin Vasquez
("Fermin"); and (c) a videotaped FBI interview with Hilburn Hisquierdo
("Hisquierdo").;

2.    the trial court committed error when it refused to admit letters written by Amador
Anzualda ("Anzualda") into evidence; and

3.    no evidence supports his conviction.

(Dkt. #1 at 7).

### IV.  Exhaustion of State Remedies and Statute of Limitations

The Director concedes that Delgado's claims are not barred by any federal statute of

limitations and are properly exhausted.  After reviewing the record, the Court agrees.

### V.  Summary Judgment Standard

A summary judgment shall be issued if the pleadings and evidence "show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999).  In

considering a motion for summary judgment, the court construes factual controversies in the light

most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 625 (5th Cir. 1998).[2] The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 106 S. Ct. at 2552; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,106 S. Ct. 1348, 1356 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc*., 106 S. Ct. 2505, 2511 (1986).

---

[2] The Fifth Circuit has held that Rule 56 applies only to the extent it does not conflict with the habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases in the District Courts), *cert. granted in part on other grounds, and dism'd*, 124 S. Ct 1652 (2004). Therefore, 28 U.S.C. § 2254(e)(1)–which mandates that findings of fact made by a state court are "presumed to be correct"–overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *See id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *See id.*

## VI.  Discussion

**1.  Procedural Defaults**

"A federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both *independent* of the merits of the federal claim and *adequate* to support that judgment."  *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995)(emphasis in original)(citing *Harris v. Reed*, 489 U.S. 255, 260, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989)).  This doctrine applies to procedural defaults that are raised on direct or habeas review.  *Id.*  However, procedural defaults do not bar habeas review of federal claims unless the last state court rendering a judgment in the case has "clearly and expressly" indicated that its judgment is independent of federal law.  *Id.* (citations omitted).  Furthermore, a state procedural ground is adequate if it is strictly or regularly applied evenhandedly to the vast majority of similar claims.  *Id.* at 339.  A judgment resting on an independent and adequate state procedural ground will bar federal habeas review of a federal claim if the petitioner cannot show cause and prejudice or that the failure to review the claim would result in a "fundamental miscarriage of justice."  *Id.* at 339.  In the context of claims involving procedural defaults, a "fundamental miscarriage of justice" means that the petitioner is actually innocent of the crime of which he was convicted.  *Smith v. Dixon*, 14 F.3d 956, 974 (5th Cir. 1994).

On April 13, 2005, the Court of Criminal Appeals denied all of Delgado's claims "without written order."  (Dkt. #6 at 2).  Therefore, the Court must examine the "last reasoned opinion" to determine whether or not Delgado's claims may be reviewed on the merits.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).  The Court finds that the Findings of Fact and Conclusions of Law, signed by Judge Joseph P. Kelly on January 6, 2005, constitutes the

"last reasoned opinion" as to all of Delgado's claims.  (Dkt. #6-5 at 17-20).

**A.  Failures to Disclose Exculpatory Evidence and the Failure to Admit Amador Anzualda's Letters**

This "last reasoned opinion" does not rely on any procedural grounds when discussing Delgado's claims involving alleged failures to disclose exculpatory evidence and the failure to admit Amador Anzualda's letters.  (Dkt. #6-5 at 17-20).  To the contrary, it appears to rely on the merits.  (Dkt. #6-5 at 17-20).  Accordingly, Delgado's claims involving alleged failures to disclose exculpatory evidence and the failure to admit Amador Anzualda's letter must be examined on their merits.

**B.  Legal Insufficiency**

It also appears that Judge Kelly's order attempts to address Delgado's claim of legal insufficiency on the merits.  However, Delgado failed to raise this claim in a petition for discretionary review.  Sufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus in Texas.  *Ex Parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994).  This procedural bar has previously been recognized by the United States Court of Appeals for the Fifth Circuit.  *West v. Johnson*, 92 F.3d 1385, 1398 n. 18 (5th Cir. 1996).  The Fifth Circuit has held that the terminology "denied without written order," when utilized by the Court of Criminal Appeals, implies that the Court rejected the sufficiency of the evidence claim on the merits rather than on a procedural ground.  *See Bledsue v. Johnson*, 188 F.3d 250, 256 n. 12 (5th Cir. 1999).  However, since *Bledsue*, the Court of Criminal Appeals has held that although a denial without a written order generally signifies a ruling on the merits, claims regarding sufficiency of the evidence will always be procedurally barred by that court in a post-conviction habeas proceeding.

*Ex Parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004)("where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable"); *see also Adi v. Dretke*, No. CivA. H-04-3311, 2006 WL 734417, *4 (S.D. Tex. March 21, 2006); *Patz v. Dretke*, No. Civ.A. H-05-0602, 2005 WL 2621552, *5 (S.D. Tex. October 14, 2005).  In light of the clear language in *Grigsby*, this Court concludes that Delgado's sufficiency of the evidence claim was barred by the Court of Criminal Appeals on procedural grounds.[3]  The Court also finds that Delgado had failed to demonstrate cause and prejudice or a fundamental miscarriage of justice as to this claim.

### C.  Factual Insufficiency

To the extent that Delgado contends that there is "no evidence" or factually insufficient evidence, such claims are based on Texas state law rather than federal law.  *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *See Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). Claims involving factual sufficiency of evidence in violation of state law do not qualify for relief under federal habeas review because they do not assert the violation of a federal constitutional right, *See Woods*, 307 at 358, and because state law questions are not reviewable in federal habeas proceedings, *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Accordingly, the Court finds that Delgado's claim of factual insufficiency of the evidence does not raise a constitutional claim and therefore does not warrant habeas relief.

### 2.  The Merits

_____

[3] In the alternative, the Court finds that the claim fails on the merits.  Ample evidence and testimony by non-accomplice witnesses and an accomplice witness supports Delgado's conviction.

### A.  Failure to Disclose Exculpatory Evidence

"[T]he suppression by the prosecution of evidence favorable to an accused [after a] request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Under clearly established Supreme Court precedent, there are three elements to a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," i.e., prejudice must have ensued from its non-disclosure.  *Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004).  However, "a *Brady* violation does not arise if the defendant, using reasonable diligence, could have obtained the information."  *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994)(citing *United States v Ramirez*, 810 F.2d 1338, 1343 (5th Cir. 1987)).

"[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d (1976).  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.  *Id.*  In assessing the materiality of undisclosed impeachment evidence, a court "must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt

8

independent of the disputed testimony." *United States v. Weintraub*, 871 F.2d 1257, 1262 (5th Cir. 1989).

### i. FBI Report Describing an Interview with Oscar Garcia

Delgado asserts that the prosecution's alleged withholding of a FBI report describing an interview with Garcia violated his due process rights. (Dkt. #1 at 7). Delgado specifically directs the Court to portions of the report indicating that Michael Martinez told Garcia that he "was looking for Chris Vasquez (the deceased) in order to collect a drug debt." (Dkt. #1 at 10). Delgado further directs the Court to a portion of the report indicating that Martinez was "specifically" owed the $300.00 drug debt in question. (Dkt. #1 at 22). Delgado maintains that he received this FBI report subsequent to his state conviction during discovery in a federal case. (Dkt. #1 at 10). Delgado has attached a copy of the report to his federal petition. (Dkt. #1 at 11-13).

The Court has reviewed the FBI report in question. The report provides in part as follows:

> [OSCAR] GARCIA advised that [CHRIS] VASQUEZ was murdered because he owed members of the [Mexican Mafia] $300.00 for cocaine. [JIMMY] DELGADO told [OSCAR] GARCIA that the [$300.00 drug debt] was specifically owed to MICHAEL DELGADO MARTINEZ. MARTINEZ also made comments to GARCIA that he was going to get his money.

(Dkt. #1 at 11). According to the report, Garcia also stated that Delgado, Martinez and Vasquez were members of the Mexican Mafia and that Delgado had "some rank" in the organization. (Dkt. #1 at 13). The report also indicates that Delgado told Garcia that the Mexican Mafia would "place a hit on Martinez for talking to the authorities." (Dkt. #1 at 13).

After examining the relevant FBI report and the record, the Court finds that Delgado's rights under *Brady* were not violated. It was well established at trial that Delgado was owed the

$300.00 drug debt in question.  Janie Padilla, Vasquez's mother, testified that Vasquez moved

away from Victoria because he owed Delgado money.  (Dkt. #10 at 29).  Janie Padilla also

testified that after Vasquez left Victoria, Delgado came around "hunting for him."  (Dkt. #10 at

29).  Roseanna Vasquez, Vasquez's sister, also testified that Vasquez owed Delgado money for

cocaine.  (Dkt. #10-2 at 2).  She also testified that Delgado came to her apartment hunting for

Vasquez.  (Dkt. #10-2 at 2).  Roseanna Vasquez further testified that she offered to pay Delgado

the $300.00 drug debt that Vasquez owed him, but Delgado refused, stating that "it was between

him and Chris [Vasquez]."  (Dkt. #10-2 at 12).  Furthermore, Jacqueline Hinojosa (Dkt. #10-3 at

2), Raymond Hinojosa (Dkt. #10-3 at 24), and April Hinojosa (Dkt. #10-4 at 5) all testified that

on the day of Vasquez's murder, Delgado arrived at their residence and demanded that Vasquez

come with him.  April Hinojosa further testified that before Vasquez left with Delgado, he told

her that he owed money to "the people" that were outside the home.  (Dkt. #10-4 at 16-17).

Lastly, Martinez, Delgado's co-conspirator, testified that Delgado was looking for Vasquez

because he owed him the $300 dollar drug debt.  (Dkt. #11-4 at 34).  This evidence is consistent

with the FBI report detailing the information provided by Garcia.  Even though Garcia allegedly

stated that the drug debt in question was "specifically" owed to Martinez, he also stated that the

debt was owed to the Mexican Mafia as a whole.  Indeed, ranking members of the Mexican Mafia

were responsible for actions of their subordinates.[4]  (Dkt. #12-5 at 11).  The report itself indicates

---

[4] Defense exhibit number three, an Information charging Martinez, describes a
"Constitution of Mexikanemi" which purports to delineate rules for the Mexican Mafia.  (Dkt.
#13-5 at 25-33).  The "Constitution" indicates that ranking members are responsible for their
subordinates and that "[e]very member of the Mexikanemi determinatly must be ready to
sacrifice his life in the same instance take away the life of others whenever this honorable deed
is necessary..."  (Dkt. #13-5 at 26-27).  This "Constitution" is consistent with the trial testimony.
The Court of Appeals of the Thirteenth District of Texas aptly characterized the Mexican Mafia

that Delgado was a ranking member and it is undisputed that Martinez was of a lower rank than Delgado.  Martinez also testified that Delgado was a ranking member of the Mexican Mafia and that he had to take orders from Delgado.  (Dkt. #11-5 at 3).  Accordingly, in light of the extensive evidence above and the nature of Garcia's statements, the Court finds that there is no reasonable probability that, had the report been disclosed to the defense, the result of Delgado's trial would have been different.

### ii.  FBI Report Describing an Interview with Fermin Vasquez and Videotaped FBI Interview with Hilburn Hisquierdo

Delgado maintains that his due process rights were violated because the prosecution did not disclose a FBI report describing an interview with Fermin Vasquez and a videotaped FBI interview with Hilburn Hisquierdo.  However, Delgado has not presented the report or the videotape before this Court.  Similarly, Delgado did not attach any such evidence to his state habeas application.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).  Accordingly, Delgado's claims involving a FBI report describing an interview with Fermin Vasquez and a videotaped FBI interview with Hilburn Hisquierdo do not warrant habeas relief.

### B.  Failure to Admit a Letter Written by Amador Anzualda

In federal habeas corpus actions, federal courts do not sit to review the mere admissibility

---

as having a "one for all and all for one" mentality and policy.  (Dkt. #7-3 at 33).  This characterization can be traced in part to a letter written by Salazar, where he explicitly states that the policy of the Mexican Mafia is "all for one and one for all."  (Dkt. #13-6 at 5).

of evidence under state law or errors under state law. *Estelle,* 502 U.S. at 67-68. Evidentiary

rulings of a state court do not warrant federal habeas corpus relief unless the errors are so extreme

that they constitute a denial of fundamental fairness under the Due Process Clause. *Little v.*

*Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). Habeas relief is warranted only when an erroneous

admission played a crucial, critical, and highly significant role in the trial. *Skillern v. Estelle*, 720

F.2d 839, 852 (5th Cir. 1983). Under federal habeas review of state court convictions, trial court

error must have "'had substantial and injurious effect or influence in determining the jury's

verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353

(1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed 1557

(1946)). Under this standard, a petitioner is not entitled to federal habeas relief based on trial

error unless he can establish that the error resulted in actual prejudice. *See Brecht*, 507 U.S. at

637.

   Delgado maintains that the trial court erred when it refused to admit certain letters[5] written

by Anzualda. *See also* (Dkt. #12-8 at 40). The Court has reviewed the letters in question. The

letters indicate that Delgado was not at the scene of the crime. (Dkt. #13-5 at 39). However, the

letters inculpate Anzualda, Martinez and Salazar. (Dkt. #13-5 at 39-40); (Dkt. #13-6 at 1-2). The

letters describe an alternative sequence of events that exculpates Delgado. (Dkt. #13-5 at 39-40);

(Dkt. #13-6 at 1-2). The Court has also reviewed a letter from Delgado to Salazar, asking Salazar

to write a statement to his lawyer. (Dkt. #13-4 at 24-26). This letter further states that Delgado

trusts Salazar and Anzualda to testify for him at trial. (Dkt. #13-4 at 24-26).

---

[5] It appears that there are two letters from Anzualda in the record. (Dkt. #13-5 at 39-40); (Dkt. #13-6 at 1-2, 7). The Court examines both of these letters.

In analyzing the admissibility of Anzualda's letters, the Thirteenth Court of Appeals stated the following:

> Even assuming Delgado preserved any error in the exclusion of Anzualda's letters, we find that the record contains ample support for the trial court's conclusion that the letters were unreliable.  The evidence is undisputed that "Friends are friends and friends stick together," as Delgado admitted during his videotaped statement.  Moreover, Martinez testified that Delgado's subordinates within the [Mexican Mafia] and prospective recruits he "picked up" were required to follow Delgado's orders.  Martinez testified that Delgado had "picked up" Anzualda and Salazar.  Thus, Delgado's letter to Anzualda and Salazar, which undeniably instructed them to testify on his behalf, is consistent both with evidence of the [Mexican Mafia's] "all for one and one for all" organizational tenents and the demands of its hierarchical command structure.  Finally, from defense counsel's cross-examination of Martinez, the jury learned that murder charges in another case had been dismissed against Delgado when "someone" wrote a letter exculpating Delgado for another murder at which Delgado was present.  We conclude that the trial court's exclusion of Anzualda's letters is reasonably supported by the record.

(Dkt. #7-3 at 35).  This Court agrees with the Thirteenth Court of Appeals.  It was repeatedly established at trial that ranking members in the Mexican Mafia, like Delgado, gave orders to subordinates.  *E.g.*, (Dkt. #12-2 at 28).  It was also established that Anzualda was subordinate to Delgado.  (Dkt. #12-2 at 27-28).  If Anzualda did not follow Delgado's orders, he could have been killed.  (Dkt. #13-5 at 27-28).  Salazar himself wrote that the Mexican Mafia abided by a policy of "all for one and one for all."  (Dkt. #13-6 at 5).  Furthermore, Martinez did indeed testify that Delgado had murder charges dropped in the past because "someone" wrote a letter exculpating him.  (Dkt. #12-5 at 10).  Under these circumstances, the Court finds that Delgado was not denied fundamental fairness under the Due Process Clause.  Accordingly, habeas relief is not warranted on this claim.

## VII.  Certificate Of Appealability

A Certificate of Appealability will not be issued unless the petitioner makes "a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 120 S.Ct. 1595, 1603-04 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  A district court may deny a Certificate of Appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that Delgado has not made a substantial showing that reasonable jurists would find the Court's procedural ruling to be debatable; therefore, a Certificate of Appealability from this decision will not be issued.

**Conclusion**

The Court **ORDERS** the following:

1.      This petition for a writ of habeas corpus is **DISMISSED**, with prejudice.

2.      The petitioner's motion for summary judgment (Dkt. #18) is **DENIED**.

3.      The Director's motion for summary judgment (Dkt. #19) is **GRANTED**.

4.      Delgado's remaining motions are **DENIED** as moot.  (Dkt. #20); (Dkt. #25).

5.      A Certificate of Appealability is **DENIED**.

**SIGNED** on this 27th day of September, 2007.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE